# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2021 FEB -2  A 10: 29

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

|  |  |  |
|---|---|---|
| **JAMES LONG,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:21–cv–95** |
| **LINCOLN LIFE ASSURANCE** | ) | |
| **COMPANY OF BOSTON,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff James Long ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Lincoln Life Assurance Company of Boston ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, HL-A Company, Inc.  In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

1

## INTRODUCTORY STATEMENT

1.      This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policies sponsored by HL-A Company, Inc.

2.      The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln Life.

3.      Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records. These conditions include lumbar radiculopathy, degenerative disc disease, bilateral knee osteoarthritis, chronic pain, and other problems.

## JURISDICTION

4.      Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5.     Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6.     Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7.     Plaintiff James Long, a resident and citizen of Clanton, Alabama, is a participant in the Plan and thus entitled to benefits available thereunder.

8.     Defendant Lincoln Life Assurance Company of Boston ("Lincoln") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9.     Lincoln is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

10.    One of Lincoln Life's designated agent for service of process is:

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11.    Lincoln Life is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

3

12.     Lincoln Life is an entity providing services to The Plans at issue.

13.     Lincoln Life is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## **THE PLAN**

14.     The HL-A Company, Inc. long-term disability plan is funded entirely by a long-term group insurance policy sold by Lincoln, the company which also underwrote this group policy.

15.     This group policy was purchased by Plaintiff's employer to confer certain benefits upon Plaintiff and other employees.

16.     As a result, these policies qualify as employee welfare benefit plans as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17.     Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term, which is as follows in relevant part:

"Disability" or "Disabled", with respect to Long Term Disability, means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i.      that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.     thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

4

18.     The policy defines "Any Occupation," the part of this disability

definition relevant to this case, as follows:

> "Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

19.     There are no Plan documents made available indicating that Lincoln

Life has an enforceable grant of discretionary authority as Plan or Claims

Administrator or that any express delegation has occurred for this Plan.

## LINCOLN LIFE'S LIABILITY

20.     Plaintiff worked for HL-A Company, Inc. in plan maintenance before

his degenerative back condition and arthritis, issues with which had long been

contending, rendered him unable to continue working in late 2017.

21.     Over time, Plaintiff had developed substantially worsening pain and

stiffness in his back, knees and feet that further diminished his stamina, pace and

concentration to perform any kinds of job tasks over an eight-hour workday due to

the conditions documented in his medical records.

22.     When Plaintiff found himself unable to return to work in late 2017, h

applied for the disability benefit that HL-A Company, Inc. provided through its

group policy with what is now Lincoln Life (formerly Liberty Life Assurance

Company of Boston).

23.     Lincoln Life announced in a letter dated January 19, 2018 that it found

him disabled under the terms of the policy as of October 1, 2017 and was entitled to

receive payment of his LTD benefit as of January 6, 2018.

24.     After this initial approval and payment of Plaintiff's claim, Lincoln Life subjected Plaintiff's claim to a rigorous cycle of repeated re-reviews involving almost monthly requests to Plaintiff and his attending physicians for updated medical information.

25.     The requests were so persistent that Plaintiff and his wife who was assisting him at the time found it to be significantly difficult to keep up with responses to these requests.

26.     When Lincoln Life would not receive a response to one of these requests within the short time it provided to Plaintiff to complete a response as occurred in August 2018 with Plaintiff, it would suspend payment of the benefit, pressuring the Plaintiff and putting him under immense financial distress.

27.     During this time, Lincoln Life also closely followed Plaintiff's pursuit of Social Security Disability benefits ("SSDI").

28.     Toward the end of 2018, Lincoln Life conducted an in-depth review following its repeated requests for records throughout the year.

29.     No Lincoln Life employees, however, made their own determinations about Plaintiff's functionality.

30.     Instead, these determinations were out-sourced entirely to a third-party insurance review company called Medical Coordinators Network ("MCN").

31.     MCN employed Dr. Anthony Grasso who was identified as being board certified in physical medicine and rehabilitation to determine Plaintiff's functional limitations.

32.     In a December 10, 2018 report from a review of medical records only, Dr. Grasso at the time found Plaintiff to be incapable of maintaining a seated position for more than 2 hours at a time (but somehow capable of sitting for all 8 hours out of an 8-hour workday); incapable of standing for more than 15 minutes at a time for a total of 1 hour per day; incapable of walking for a total of more than 30 minutes per workday, and to have significant limitations in his ability to exert forces pushing, pulling, or carrying objects and some limitations in his range of motion and abilities to reach.

33.     Based on this review, Lincoln Life found no justification as of yet to terminate the claim.

34.     A few months later, Lincoln Life initiated yet another review and sent Plaintiff another packet of questionnaires and authorizations to complete (which he did).

35.     In a phone call, Lincoln Life informed Plaintiff's wife (who was acting as his appointed representative at the time) this this new review was to ascertain Plaintiff's eligibility for LTD benefits beyond its first 24 months of payment, at which point the definition of disability in the Plan changed from one being based on

7

his ability to perform the "Material and Substantial Duties of his Own Occupation" to his ability to perform, "with reasonable continuity, the Material and Substantial Duties of Any Occupation."

36.     During this review for continued eligibility for benefits beyond the Plan's change in the definition of disability after 24 months, Plaintiff received his Notice of Award from the Social Security Administration finding him to be entitled to receive SSDI commencing May 2018 based on a disability date of November 6, 2017.

37.     Within one month of this SSDI approval, Lincoln Life, now comfortable that it would be receiving money *back from the Plaintiff* due to Plan offset provisions, reached a contrary conclusion about Plaintiff's status and in a letter dated February 29, 2020, terminated and closed Plaintiff's benefit effective February 27, 2020.

38.     As before, Lincoln outsourced its review of Plaintiff's functional limitations to a review service, which this time was MLS Group of Companies ("MLS").

39.     MLS had retained Dr Eric Kerstman who was board certified in physical medicine and rehabilitation, to review Plaintiff's medical records and provide a report indicating Plaintiff's current functional status.

40.     Dr. Kerstman evidently was not made aware of Plaintiff's diagnostics

8

and medical records confirming that he had a deteriorating spine as Dr. Grasso has correctly recognized, stating that he could not locate any "impairing diagnoses based on the documentation provided...." Amazingly, notwithstanding clear records to the contrary and even Dr. Grasso's previous report for Lincoln Life, Dr. Kerstman found there to be no functional limitations for Plaintiff at all, even after learning that Plaintiff used a cane to walk.

41.     Lincoln Life liberally block-quoted Dr. Kerstman's report and followed that quote with the cut statement informing Plaintiff that he did not meet the Plan's disability definition as of February 27, 2020 and that his claim was to be denied and closed effective on that date.[1]

42.     That letter does not refer to a vocational evaluation having been made as of that date, nor does the claim record produced by Lincoln Life at Plaintiff's request indicate such as having yet occurred by then.

43.     Plaintiff, acting *pro se*, appealed this termination and closure of his claim in a letter dated July 8, 2020 based on his medical records, a recently obtained Functional Capacity Examination result he had obtained for the SSA that contributed

---

[1] Although the disability definition under the policy changed as of January 3, 2020, claim notes and payment history confirms that Lincoln Life continued to consider Plaintiff eligible for benefit beyond that 24-month mark. Although Lincoln Life's claim notes suggest this post-24-month period of payment was pursuant to an "ROR" (presumably meaning a reservation of rights), Lincoln Life provided no notice to Plaintiff informing of this condition attached to his benefit beyond January 3, 2020.

to his SSDI approval, the SSA disability questionnaire he had provided to the SSA, and the SSA's written decision finding him to be entitled to SSDI.

44.     The SSA documentation was especially relevant to Plaintiff's appeal.

45.     The statement provided to the SSA described in detail the Plaintiff's daily experiences with pain, the impact that pain had on him, and the extent to which Plaintiff was unable to function in his daily life.

46.     The SSA decision noted the testimony of a vocational expert during Plaintiff's SSDI appeal hearing who "testified the claimant has no transferrable job skills to sedentary work."

47.     During its review of the appeal, Lincoln Life again outsourced its determination of Plaintiff's functional limitations to a third party, this time to Exam Coordinators Network ("ECN").

48.     ECN retained two professionals to review records: (1) psychiatrist Dr. Chirag Raval, presumably to address Plaintiff's statements regarding his mental acuity in light of the anxiety, depression and profound stress his physical conditions cause him from day to day, and (2) Dr. Daniel Fung, board certified in physical medicine and rehabilitation as well as pain management.

49.     The collective outcome of these two reviews was the same as the review Lincoln Life purchased earlier in the year from Dr. Kerstman via MLS: that Plaintiff has no functional restrictions.  The reason given for this odd conclusion this time

was that the FCE Plaintiff had attended, which Dr. Fung clearly had to reckon with, "did not include documentation of specific observed and measurable findings to support the need for restrictions and limitations."

50.     In other words, Dr. Fung opined for Lincoln Life that the FCE was invalid, when clearly pursuant to governing standards and guidelines for FCEs, this was outwardly false.

51.     In a laughable conclusion, Dr. Fung found Plaintiff had miraculously recovered in all respects from his degenerative disk disease, osteoarthritis and other issues and was cleared for return to fulltime work in any capacity with any physical demand, including that of his former occupation with HL-A Company, Inc.

52.     Shortly after the issuance of the opinions from Dr. Fung and Dr. Raval on August 28, 2020, Lincoln Life made a first-time referral of Plaintiff's claim to for a Transferrable Skills Analysis ("TSA") to obtain a vocational determination.

53.     While Lincoln Life had conducted an occupational analysis to ascertain the specific job responsibilities for Plaintiff's occupation with HL-A Company, Inc. in 2018 after the claim was opened, no TSA had been performed as of August 2020, including before the issuance of its original termination of the claim on February 29, 2020.

54.     Senior Vocational Case Manager Michelle Reddinger, who was identified as being associated with "Lincoln Financial Group," was asked to

determine whether Plaintiff had transferrable skills that would enable him to work in an alternative occupation within the national economy based not on Dr. Fung's and Dr. Raval's openly ridiculous reviews completed later that month, but on Plaintiff's June 8, 2020 FCE which he had submitted.

55.    Notably, Ms. Reddinger's report and the claim file generally show she was NOT asked to consider Plaintiff's SSA disability determination or in particular the vocational conclusion reached as part of that determination that Plaintiff had no transferrable job skills even to sedentary employment.

56.    In her report dated August 10, 2020, Ms. Reddinger nevertheless found that Plaintiff could perform the following alternative occupations: (1) Tool Design Checker; (2) Supervisor, Vendor Quality; (3) Order Department Supervisor; (4) Supervisor, Production Clerks; (5) Production Coordinator; and (6) Expeditor.

57.    That assessment was foundationally flawed, however, because the monthly wages considered for each occupation according to the report were median waged in the national economy, not entry level wages, which is what the policy implicitly considers given its recognition that Plaintiff would be returning not to his "Own Occupation," but "Any Occupation," which the policy defines to mean "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

58.    It was also foundationally flawed because the analysis openly did not

12

consider Plaintiff's age (a factor which brings the vocational component in line with that the SSA considers for determining eligibility for SSDI).

59. In fact, even the appeal decision later issued on September 10, 2020 outwardly indicates that the TSA did not consider Plaintiff's age as a factor even though all *other* parts of the "Any Occupation" definition *were*.

60. Lincoln Life's September 10, 2020 letter denying Plaintiff's appeal is significant for the additional reason that it represented an entirely *new* claim decision, not just an affirmance of the original decision issues earlier that year. In particular, it relied on two entirely new independent medical reviews as noted above, and even more importantly, it included a new vocational review that had never been conducted on the claim before.

61. None of these reports or reviews were ever disclosed or provided to Plaintiff for response in compliance with 29 C.F.R. § 2560.503-1(h)(4)(I) before Lincoln Life decided the appeal and informed that no new information would be considered.

62. According to ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. 70,246, 70,255 (Nov. 21, 2000), which is supported by two other federal decisions in Alabama, Lincoln Life's failure to comply with 29 C.F.R. § 2560.503-1(h)(4)(I) is a deprivation of Plaintiff's right to a full and fair review of his claim that results in the application of a de novo review

13

standard to Lincoln Life's decision regardless of the applicability of any express delegation of discretionary authority under the Plan.

63.     Lincoln Life's administration of this claim involves numerous other regulatory and plan breaches and errors, including:

        (a)     The failure to maintain adequate claims procedures, or any procedures *at all*, in compliance with Department of Labor regulations;

        (b)     The targeting of Plaintiff's claim for denial because ERISA governs;

        (c)     The failure by Lincoln Life to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

        (d)     The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim, including specifically its claim file for Plaintiff's short term disability claim which was paid in full;

14

(e)     Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all his claim;

(f)     Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(g)     Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(h)     Failing to give proper consideration to Plaintiff's Social Security disability determination in accordance with Eleventh Circuit precedent, especially as to that determination's indistinguishable vocational component;

(i)     Failing to provide the Plaintiff with an opportunity to respond to new evidence obtained during the claim process, namely, the new medical and vocational reviews referenced above; and

(j)     Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how his conditions impacted one another.

15

64.    Despite Plaintiff's established disability and entitlement to coverage under the terms of the LTD Plan, Lincoln Life continues to consider Plaintiff to be "not disabled" and unqualified for LTD benefits.

65.    As set forth above in connection with Lincoln Life's fiduciary breaches, Lincoln Life's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

66.    This conflict of interest further calls into question the credibility of Lincoln Life's claims personnel and reviewers who behaved dishonestly and who openly defied Plan terms and department of labor regulations.

67.    Lincoln Life considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision.

68.    Lincoln Life did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Long respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a.     For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b.     For a judgment against the Defendant awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c.     For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d.     Such other relief as may be deemed just and proper.

Respectfully submitted,

David P. Martin (ASB-3500- M68D)
M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com
clay@erisacase.com

**Plaintiff's Address:**

James Long
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104